No. 19,141.

WILLIAM L. WILSON *v.* MABLE B. GIRLEY.
(357 P. [2d] 932)

Decided December 23, 1960

Mr. CARL M. PERRICONE, Mr. GASPAR F. PERRICONE, for plaintiff in error.

Mr. BERNARD E. ENGLER, for defendant in error.

*In Department.*

PER CURIAM.

THE parties appear here as they appeared in the trial court, and they will be referred to as plaintiff and defendant, or by name.

Plaintiff filed his complaint in the district court seeking cancellation of a deed conveying a house and lot to the defendant, Mable B. Girley.

As grounds for cancellation, plaintiff alleged that he was old, infirm and in ill health at the time of executing the deed, and that defendant, taking advantage of plaintiff's incapacity, falsely and fraudulently procured his signature to said deed without consideration, and which defendant falsely and fraudulently represented to be a mere matter of form.

At the time of the execution of the deed, plaintiff was

approximately seventy-one years of age. He first became acquainted with defendant in September of 1954, and on July 10, 1955, plaintiff moved to the home of the defendant and occupied a room, agreeing to pay $10.00 a week for rent; however, no rent was actually ever paid by plaintiff while he lived at the home of defendant.

Plaintiff was then employed by the Pullman Company at a salary of approximately $300.00 per month, was badly in debt and was being besieged by his creditors to pay his bills or be garnisheed. At the request of plaintiff, defendant began managing plaintiff's affairs and contacted his creditors in an effort to forestall legal proceedings against him. She assumed the responsibility of paying plaintiff's bills with money given her by plaintiff from his wages; she was authorized to collect rentals from property owned by plaintiff and to use the rentals so collected to reduce the mortgages and other indebtedness owed by plaintiff.

While plaintiff resided in her home, defendant prepared his meals, cared for him when he became ill on several occasions, and otherwise generally managed his affairs. The parties had discussed the possibility of marriage, and apparently plaintiff's proposal was accepted.

On July 14, 1955, the parties went to an attorney's office where a deed was signed by plaintiff. In addition, a written agreement signed by both parties and the attorney as escrow agent, recited that the deed was given in consideration of the many services and kindness performed by defendant to plaintiff, and that it was the desire of plaintiff to provide compensation to defendant for such service and to provide for her after the death of plaintiff, unless defendant should, before that time, marry someone other than plaintiff, and thereby be provided for.

The parties then covenanted that, "So long as defendant shall during the lifetime of plaintiff remain unmarried, other than marriage to plaintiff, said conveyances shall stand."

After the agreement and deed were signed and executed, plaintiff continued to live at the residence of defendant; however, the parties never married and in March of 1956, after a disagreement between them, plaintiff left the home of defendant, withdrew defendant's authority to collect his rents and began managing his own affairs. The parties now disagree upon the reasons leading to the signing and execution of the deed and agreement. The plaintiff contends that it was his understanding that the parties were about to marry and that he had the utmost confidence in her and thought that since they were going to be married, it would be all right. The defendant testified that plaintiff said he wanted to compensate her for her services and for trying to get him out of debt because he was worried as to what would happen to his bills.

Trial was to the court and at the close of plaintiff's evidence the court granted defendant's motion to dismiss and entered judgment for the defendant.

The trial court found that there was nothing before the court to show the incapacity of the plaintiff and that at the time of trial plaintiff clearly answered all of the questions that had been put to him and that he was not incompetent; it further found that the consideration expressed in the deed and agreement was sufficient.

■ A review of the record discloses that plaintiff's allegations of mental incapacity and fraud are not sustained by the evidence. This court has consistently held that for an instrument to be set aside on a claim of incapacity and fraud, the evidence must be clear and convincing. *Martinez v. Martinez,* 57 Colo. 292, 141 Pac. 469; *Wilson v. Morris,* 4 Colo. App. 242, 36 Pac. 248. The evidence here does not meet this test.

■ In any event, the question being one of fact, the trial court was the sole judge of the weight and probative value of the evidence.

We have repeatedly refused to disturb the findings of a trial court if its conclusions are supported by the evi-

dence or fair deductions therefrom. *Davis v. Pursel,* 55 Colo. 287, 134 Pac. 107; *Bevins v. Van Matre,* 129 Colo. 400, 270 P. (2d) 761.

■ The claim of plaintiff that the conveyance was without consideration is not supported by the record. There is sufficient competent evidence in the record, including plaintiff's testimony and admissions, to justify a finding by the trial court that adequate consideration existed. In *Hanks v. McNeil Coal Corporation,* 114 Colo. 578, 168 P. (2d) 256, it was held:

"The question to be determined is not whether the consideration was inadequate, but whether the transaction was in fact the result of independent judgment or was induced by coercion or imposition so as not to constitute the free and considered act of the party; whether, in ancient phrase, it was 'wittingly and willingly entered into.' 'The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for cancelling an executed or executory contract.' "

In this court plaintiff does not press his theory of false and fraudulent acts of the defendant and of the incapacity of plaintiff, but bases his argument chiefly on the ground that the judgment should be reversed because the deed and agreement, allegedly being a restraint upon marriage, are contrary to public policy.

■ This argument is not within the issues framed by plaintiff's complaint or upon which the case was tried, and may not be presented for the first time in this court. *Maruca v. Hunter,* 140 Colo. 450, 344 P. (2d) 968.

The judgment is affirmed.

MR. JUSTICE KNAUSS, MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.